UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| KAAREN TEUBER, et al. | § § § | |
| Plaintiffs | § § | |
| v. | § § | CIVIL ACTION NO. 11-CA-00059 |
| STATE OF TEXAS, et al. | § § § | |
| Defendants | § § | |
| MEXICAN AMERICAN LEGISLATIVE CAUCUS, TEXAS HOUSE OF REPRESENTATIVES (MALC) | § § § § | |
| Intervenor/Third Party Defendant | § | |

**PROPOSED MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 24 (c), Intervenor files this motion to dismiss together with its motion to intervene. Since the Plaintiffs have initiated a legal action prematurely, and since Plaintiffs have failed to allege facts sufficient to state a claim upon which relief may be granted, this Court lacks the jurisdiction to proceed. Accordingly, this action should be dismissed.

**Plaintiffs' Complaint**

Plaintiffs have filed their original complaint alleging a cause of action against the State of Texas and various government state and federal officials, for violation of numerous United States Constitutional provisions, federal statutory provisions as well as provisions of the Texas Constitution. The essence of Plaintiffs' complaint can be summarized in two parts: first, the complaint is premised on the allegation that the population variances between congressional,

1

state house, state senate and state board of education electoral districts exceed population variances allowed by federal and state constitutional standards; and second, the use of the 2011 federal census discriminates against residents of some non-Hispanic majority districts because the census includes undocumented non-citizens.  Neither of these theories of Plaintiffs' case is ripe for litigation.

**Facts**

This action was filed by three individual voters.  Two of the Plaintiffs are registered voters from Denton County and one from Grayson County.   The Plaintiffs do not identify their race or ethnicity.  The action was filed on February 10, 2011.  The lawsuit claims that the population of certain electoral districts for the Texas House of Representatives, the Texas Senate, the United States House of Representatives, and the State Board of Education substantially exceed the population of the ideal population district, as determined by the 2000 Census, for each of these governmental entities. (Plaintiffs' Original Complaint, Docket Document # 1, par. 24-31) (Presumably the districts cited as exceeding the ideal district size for such districts in 2000, are the districts in which the Plaintiffs reside.)

In addition the Plaintiffs allege that the 2010 census data includes undocumented non-citizens within its counts. *Id.* at para. 22.   (The Plaintiffs do not assert any facts that support this allegation.)  Plaintiffs further allege that the inclusion of undocumented non-citizens in the 2010 census, provides an unconstitutional advantage for Latino voters and discriminates against voters in non-Hispanic majority districts, including the districts in which the Plaintiffs reside. *Id.* pp. 6-7 para. 22.

According to Plaintiffs, these facts constitute a violation of their rights, as provided by: Article 1, Section 2 of the United States Constitution; the 14th and 15th Amendments of the

2

United States Constitution; 42 U.S.C. Section 1983; 2 U.S.C. Section 2c; Section 2 of the Voting Rights Act, 42 U.S.C. Section 1973; Article I, Sections 3, 3a, 19, and 29 of the Texas Constitution; and Article III, Section 26 of the Texas Constitution.

When the lawsuit was filed on February 10, 2011, the Census 2010 redistricting data for Texas had not been released. Moreover, since the Texas legislative session commenced about a month before the lawsuit was filed, the Legislature has not had an opportunity to consider redistricting proposals much less adopt a redistricting plan for the challenged districts.

### I.   Legal Standards

Intervenor's Rule 12 (b) (1) & (6) motion for dismissal is based on two separate grounds. The Plaintiffs: have failed to state a claim upon which relief may be granted; and lack subject matter jurisdiction because the action is not ripe for review.  Once a defendant files a motion to dismiss for lack of subject-matter jurisdiction, the plaintiff has the burden of establishing that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).

#### A.  Failure to State a Claim

This case should be dismissed because well established federal precedent has rejected efforts to exclude non-citizens from redistricting population. Although the factual allegations should be taken as true, this case should be dismissed because Plaintiffs did not allege facts that support a right to relief. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995).  Moreover, the Plaintiffs are required to allege facts that specify instances of specific unlawful discrimination and they have not. *See Coyne v. City of Somerville,* 972 F. 2d 440, 442-45 (1st Cir. 1992).

The Plaintiffs allege that because the State will use total population data for its redistricting plans, rather than population that somehow identifies and excludes undocumented

non-citizen population from the redistricting data, it is a violation of their rights as a matter of law. (P's Original Complaint, pp. 6-7).

The Fifth Circuit and the Ninth Circuit have each faced this question and determined that whatever authority a governmental body has of choosing redistricting data other than the United States Census, no constitutional or statutory requirement exists to mandate the use of some population other than the most recent Census population figure. *See: Chen v. City of Houston*, 206 F.3d 502, 528 (5th Cir. 2000); *Garza v. Los Angeles County*, 918 F.2d 763 (9th Cir. 1990). Thus, while the law seems to permit states to consider the distribution of the voting population - as well as that of the total population - in constructing electoral districts, it does not *require* states to do so. *Burns v. Richardson, 384 U.S. 73, 91-92,* (1966). In fact, the *Richardson* Court expressly stated that "the decision to include or exclude [aliens or other nonvoters from the apportionment base] involves choices about the nature of representation with which we have been shown **no constitutionally founded reason to interfere**." *384 U.S. at 92*. (emphasis added) *Richardson* does not overrule the portion of *Reynolds v. Sims, 377 U.S. 533, 568,* (1964), that held that apportionment for state legislatures must be made upon the basis of total population.

In *Reynolds, 377 U.S. at 560-61,* the Supreme Court applied to the apportionment of state legislative seats the standard enunciated in *Wesberry v. Sanders, 376 U.S. 1,* (1964) that "the fundamental principle of representative government is one of equal representation for equal numbers of people, without regard to race, sex, economic status, or place of residence within a state." This standard derives from the constitutional requirement that members of the House of Representatives are elected "by the people," *Reynolds, 377 U.S. at 560,* from districts "founded on the aggregate number of inhabitants of each state" (James Madison, The Federalist, No. 54 at 369 (J. Cooke ed. 1961)); U.S. Const. art. I, § 2. The framers were aware that this apportionment

and representation base would include categories of persons who were ineligible to vote -- women, children, bound servants, convicts, the insane, and, at a later time, aliens. *Fair v. Klutznick,* 486 F. Supp. 564, 576 (D.D.C. 1980). Nevertheless, they declared that government should represent *all* the people. In applying this principle, the *Reynolds* Court recognized that the people, including those who are ineligible to vote, form the basis for representative government. Thus, population is an appropriate basis for state legislative apportionment.

Furthermore, Texas state law requires districting to be accomplished on the basis of total population for the Texas House of Representatives. Article III, § 25, Texas Constitution.[1] No part of the holding in *Richardson*, or in any other case that we are aware of, suggests that the requirements imposed by such state laws may be unconstitutional. In fact, in *Gaffney v. Cummings, 412 U.S. 735, 747,* (1973), the Court approved a redistricting based on total population, but with some deviations based upon consideration of political factors. In approving that plan, the Court expressly noted that districting based upon total population would lead to some disparities in the size of the eligible voting population among districts. These differences arise from the number of people ineligible to vote because of age, alienage, or non-residence, and because many people choose not to register or vote. *Gaffney,* 412 U.S. at 746-47. The Court made no intimation that such disparities would render those apportionment schemes constitutionally infirm.

Even the limited latitude *Gaffney* affords state and local governments to depart from strict total population equality is unavailable here. The Supreme Court has held that unless a court ordering a redistricting plan can show that population variances are required by "significant state

---

[1] The Texas Constitution also provided for redistricting to be done by "electors" for the Texas Senate. *See* Article III, Section 26, Texas Constitution.  However this provision of the Texas Constitution was struck down by a United States District Court in *Terrazas v. Clements*, 581 F. Supp. 1319, 1328, (N.D. Tex. 1983)(Court found that use of electors rather than total population diluted the voting strength of racial and ethnic minorities in violation of the 14th and 15th Amendments to the United States Constitution)

policies", that court must devise a plan that provides for districts of equal population. *Chapman v. Meier,* 420 U.S. 1, 24 (1975). Since Texas law requires equality of total population across districts, there are no locally relevant contrary policies.

Moreover, in this case, basing the districts on voting population of some sort, rather than any total population, would disproportionately affect these rights for people living in Latino districts. *Terrazas v. Clements*, 581 F. Supp. 1319, 1328, (N.D. Tex. 1983)(Court found that use of electors rather than total population diluted the voting strength of racial and ethnic minorities in violation of the 14th and 15th Amendments to the United States Constitution).

Finally, the Plaintiffs failed to allege facts that support modifying the 2010 census. The Fifth Circuit has recognized that for redistricting purposes, the census figures are presumed accurate until proven otherwise. *Valdespino v. Alamo Heights I.S.D.*, 168 F.3d 848, 853-854 (5th Cir. 1999). In redistricting, a state cannot "correct" census figures "in a haphazard, inconsistent manner". *Karcher v. Daggett,* 462 U.S. 725, 732 n. 4 (1983). Instead, the Court declared that "[a]dopting any standard other than population equality, using the best census data available … would subtly erode the Constitution's ideal of equal representation." *Karcher*, 462 U.S. at 731. A new constitutional rule as proposed by the Plaintiffs requiring equal numbers of citizens, would require a different kind of census than the one currently conducted or the one the text of the Constitution requires. The decennial census and the redistricting dataset produced from it do not include citizenship numbers, much less undocumented non-citizen numbers. The only source of data on citizenship is the American Community Survey, which is now given yearly to a very Methodology 2-4, 2009, found at:

http://www.census.gov/acs/www/Downloads/survey_methodology/acs_design_methodology.pdf

6

Under these circumstances reliable, data to do what Plaintiffs propose is simply not available and any method that Plaintiffs would propose simply would not meet the exacting standards required to modify or replace the United States Census. *Perez v. Pasadena I.S.D.* 165 F.3d 368, 373 (5th Cir. 1999); *See also:* Persily, Nathaniel, *The Law of the Census: How to Count, What to Count, and Where to Count Them*, 32:3 Cordozo Law Review 755, 777-79, 2011.

Clearly, the Plaintiffs have not asserted facts that state a claim upon which relief may be granted.

**B. Ripeness**

The Supreme Court has characterized ripeness as "peculiarly a question of timing." *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974). Ripeness concerns not only whether a court *can* act (limits on judicial power) but also whether it *should* act (prudential reasons for refusing to exercise jurisdiction). *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 733 n.7 (1997); *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 57, n. 18. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated…." *Texas v. United States* 523 U.S. 296, 300 (1998).

In the redistricting cycle ten years ago, the issue of when a redistricting case becomes ripe was squarely addressed by three different United States District Courts, all with the same conclusion: a redistricting case does not become ripe until the legislature has had an opportunity to act. *Mayfield v. Texas,* 206 F. Supp.2d 820, 823-24, (E.D. Tex. 2001); *Lee v. Texas*, No. 6:01-CV-98 (E.D. Tex. Order filed April 26, 2001); *Associated Republicans of Texas v. Texas*, No. W01-CA-083 (W.D. Tex., Order filed March 9, 2001).  Nor may the case be abated to allow for events to make it ripe. The case simply cannot be used as a "placeholder suit" unless it is ripe, and it cannot become ripe if the dispute was not ripe when the motion to dismiss was heard.

*Balderas v. Texas*, No. 6:01-CV-158 (E.D. Tex., Order filed July 23, 2001); *Mayfield*, 206 F. Supp.2d at 826; *Manley v. Texas*, No. 6:01-CV-231 (E.D. Tex., order filed July 23, 2001). For these reasons the lawsuit should be dismissed.

**Argument and Authority**

    1. **Electoral Equality – Representational Equality**

The Plaintiffs claim that inclusion of undocumented non-citizens in the 2010 census will violate their rights because non-Hispanic majority districts, such as the districts in which they reside, will have a disproportionately larger number of voting population than Hispanic majority districts. (Plaintiffs' Original Petition, pp. 6-7, para. 22).  The essential question on this issue is whether the Constitution requires the use of one theory of representation – electoral equality (equality of voters) or representational equality (equal numbers of people) – over the other.  The Plaintiffs argue that under the facts of this case the State is constitutionally required to use district drawn on the basis of electoral equality. Intervenor contends that no such authority exists under either the United States Constitution or the Texas Constitution, to require the State of Texas to insure electoral equality in its redistricting plans.

The Fifth Circuit has confronted this issue and has expressly held that the United States Constitution does not mandate use of either theory, but rather leaves the "eminently political question" of whether to draw districts on the basis of representational equality or electoral equality "to the political process." *Chen v. City of Houston*, 206 F.3d 502, 528 (5th Cir. 2000). Similarly, the Supreme Court has said that the decision relating to the nature of representation is one "with which we have been shown no constitutionally founded reason to interfere." *Burns v. Richardson*, 384 U.S. 73, 92 (1966).

In fact, the Texas Constitutional requirement that Texas Senate districts be drawn in such a fashion as to require electoral equality, Article III, Section 25, has been declared unconstitutional. *Terrazas v. Clements*, 581 F. Supp. 1319, 1328, (W.D. Tex. 1983)(Court found that use of electors rather than total population diluted the voting strength of racial and ethnic minorities in violation of the 14th and 15th Amendments to the United States Constitution).

Since the Texas Legislature has not had an opportunity to determine whether its redistricting obligation can be met by adopting either electoral equality or representational equality as a standard, this action is not ripe for adjudication. *Mayfield,* 206 F. Supp.2d at 824 (ruling that case was not ripe since the State had not been allowed to respond to the new census figures and because there was no reason to believe that the Texas Legislature would fail in its duty to redistrict based on the new census data).

**2.  One Person One Vote**

The Plaintiffs also claim that the current districts have impermissible variances in total population from 2000 ideal district size so that their constitutional rights have been violated. (Plaintiffs' Original Petition, pp. 7-9, para. 24-31).  Yet, now that the census numbers have been released to the State, the measure for population equality is not the 2000 ideal district size, but rather the 2010 ideal district size. The fact that those data have only recently been released to Texas and the fact that the Texas Legislature has not been given an opportunity to deal with the new population figures, makes this claim unripe as well. *Mayfield,* 206 F. Supp. at 824. Therefore, in either case, whether one uses the ideal district size for 2000 or the ideal district size for 2010, this case should be dismissed because it is not ripe for adjudication.  *Id.*

DATED:      February 22, 2011                    Respectfully submitted,.

                                                                                       JOSE GARZA
LAW OFFICE OF JOSE GARZ

7414 Robin Rest Dr.<br>
San Antonio, Texas<br>
210-392-2856<br>
garzpalm@aol.com

/s/ Jose Garza_____
Jose Garza

## CERTIFICATE OF SERVICE

I certify that on February 22, 2011, a copy of Intervenor's motion to intervene and proposed motion to dismiss was filed electronically with the United States District Court for the Eastern District of Texas, Sherman Division, with notice of case activity to be generated and sent electronically by the Clerk of the Court with ECF notice being sent to the following counsel of record for the Plaintiffs:

Michael S. Hull,
221 West 6th Street, Suite 960,
Austin, Texas 78701-3407,
mhull@hhm-llp.com

A copy of said motion and proposed motion were also served on the above listed counsel of record by certified United States mail.

I further certify that on February 22, 2011 personal service of a copy of Intervenor's motion to intervene and proposed motion to dismiss was prepared for the following Defendants:

Defendants: State of Texas; Hon. Rick Perry, Governor of the State of Texas; Hon. Hope Andrade, Texas Secretary of State; Hon. David Dewhurst, Lt. Governor of the State of Texas; and Hon. Joe Straus, Speaker, Texas House of Representatives may be served by delivering a copy of the Intervenor's Motion to Intervene and Intervenor's Proposed Motion to Dismiss on the chief executive officer of the State through the Texas Secretary of State at P.O. Box 12887; Austin, Texas 78711-2887.

Defendant Boyd Richie, Chairman, Texas Democratic Party may be served by delivering a copy of the Intervenor's Motion to Intervene and Intervenor's Proposed Motion to Dismiss at 505 West 12th Street, Suite 200; Austin, Texas 78701

Steve Munisteri, Chairman, Texas Republican Party may be served by delivering a copy of the Intervenor's Motion to Intervene and Intervenor's Proposed Motion to Dismiss at 1108 Lavaca, Suite 500; Austin, Texas 78701.

Hon. Gary Locke, United States Secretary of Commerce may be served by delivering a copy of the Intervenor's Motion to Intervene and Intervenor's Proposed Motion to

Dismiss at John M. Bales at U.S.Attorney's Office, Eastern District of Texas, 110 North College, Suite 700, Tyler, Texas 75702; The U.S. Attorney General at Department of Justice, 950 Pennsylvania Avenue N.W., Washington, D.C. 20530; and Gary Locke at U.S. Department of Commerce, Herbert C. Hoover Building, 14th & Constitution Avenue N.W., Mail Stop 5875 HCHB, Washington, D.C. 20230

Hon. Robert Groves, Director, United States Bureau of Census may be served by delivering a copy of the Intervenor's Motion to Intervene and Intervenor's Proposed Motion to Dismiss to Defendant Groves may be served by delivering a copy of the summons and the complaint to John M. Bales at U.S. Attorney's Office, Eastern District of Texas, 110 North College, Suite 700, Tyler, Texas 75702; The U.S. Attorney General at Department of Justice, 950 Pennsylvania Avenue N.W., Washington, D.C. 20530; and Robert Groves at U.S. Census Bureau, 4600 Silver Hill Road, Washington D.C. 20233.

/s/ Jose Garza
Jose Garza